**Paul K. VOELKER, Appellant,**

v.

**INTERNAL REVENUE SERVICE, Appellee.**

**No. 80–1370.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1981.

Decided April 13, 1981.

Paul K. Voelker, pro se.

Kristina Harrigan, Atty., Dept. of Justice, Washington, D.C., Robert D. Kingsland, U. S. Atty., Bruce D. White, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON, Senior Circuit Judge, and HEANEY and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

Plaintiff-appellant Paul K. Voelker initiated this action pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1)(B), seeking access to certain records held by the Internal Revenue Service. Voelker, an attorney in the St. Louis office of the IRS District Counsel, requested the IRS to release information "relative to an investigation initiated on me on or around March 26, 1974, by the Internal Revenue Service." The IRS responded by releasing a part of his record, but it withheld two pages of a "Collateral Report" and a portion of one page of a "Final Report." Subsequently, the IRS released all of the Final Report, but continued to withhold portions of the Collateral Report. After exhausting his administrative

remedies, Voelker brought suit in federal district court. The IRS maintained that the Privacy Act did not authorize release of the deleted portions of Voelker's record. The district court granted the IRS's motion for summary judgment and denied Voelker's request for further discovery. *Voelker v. I. R. S.*, 489 F.Supp. 40 (E.D.Mo.1980). We reverse and remand.

Section 3(d)(1) of the Privacy Act, 5 U.S.C. § 552a(d)(1), provides in relevant part as follows:

> Each agency that maintains a system of records shall—
>
> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him * * * to review the record and have a copy made of all or any portion thereof in a form comprehensible to him * * *.

In apparent contradiction to section 3(d)(1), section 3(b) provides that "[n]o agency shall disclose any record which is contained in a system of records * * * to any person * * * except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, * * *" unless certain exceptions apply. 5 U.S.C. § 552a(b).

The IRS maintains that the withheld portion of Voelker's record consists of personal information pertaining to a third party. It contends, therefore, that section 3(b) of the Act controls Voelker's request under section 3(d)(1) and prohibits the release of that information. The district court agreed with this position, holding that "before an individual is permitted to obtain information contained within an agency record system, the information must pertain to him * * *."

In our view, the district court's conclusion runs contrary to the plain language of the statute and is based on an inadequate consideration of the purposes and policies underlying it. As noted, section 3(d)(1) grants an individual a right of access "to his record or to any information pertaining to him which is contained in the system." 5 U.S.C. § 552a(d)(1). The district court held that

this statute only authorizes disclosure of information *pertaining to* the requesting individual. This ignores the wording of the statute. It clearly states that an individual is entitled to *his record*,[1] as well as to other information that pertains to him. There is no justification for requiring that information in a requesting individual's record meet some separate "pertaining to" standard before disclosure is authorized. In any event, it defies logic to say that information properly contained in a person's record does not pertain to that person, even if it may also pertain to another individual. Accordingly, we hold that a federal agency does not have discretion to withhold information contained in a requesting individual's record on the ground that the information does not pertain to that individual.[2]

Our conclusion is consistent with the underlying purposes of the Privacy Act. Although the legislative history of the Privacy Act is somewhat incomplete,[3] it is clear that the Act was intended to balance the federal government's need to gather information with the individual's right to privacy. *See, e. g.,* H.R.Rep.No.93–1416, 93d Cong., 2d Sess. 4 (1974). It does so by limiting the types of information the government may collect, by restricting the means by which the government may gather and store information, and by establishing conditions for the release of information held by the government.

Although the Privacy Act appears to impose relatively stringent guidelines on government agencies, enforcement depends almost exclusively on the initiative of private parties. *See* Note, *The Privacy Act of 1974: An Overview and Critique,* 1976 Wash.U.L.Q. 667. To be able to intelligently challenge the government's recordkeeping practices, individuals have been given a right of access to their own records. Thus, permitting individuals to examine governmental records to determine their scope and accuracy is critical to the Privacy Act's effectiveness.

A review of the specific provisions of the Privacy Act supports the conclusion that access to records is a central feature of the Act. Section 3(e)(4) requires each agency to annually publish in the Federal Register "a notice of the existence and character of the system of records." 5 U.S.C. § 552a(e)(4). The obvious rationale for this provision is to facilitate access to government records by informing individuals that they may be the subject of federal recordkeeping. Section 3(e)(1) provides that each agency shall "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). The only way an individual can be sure that his record contains only "relevant and necessary" information is by viewing it. Similarly, subsections 2, 3 and 4 of section 3(d), 5 U.S.C. § 442a(d)(2)–(4), set forth procedures

---

1. The term "record" is defined in the statute as any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph * * *.
5 U.S.C. § 552a(a)(4).
A "system of records" is defined to mean a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual * * *.
5 U.S.C. § 552a(a)(5).

2. We note that the withheld information in this case was obviously gathered as part of an investigation of Voelker. We thus are not faced with the situation in which irrelevant materials were inadvertently misfiled or otherwise mistakenly placed in the record of the requesting party. We need not decide whether access to that type of information is required by the Privacy Act.

3. The Privacy Act was the result of a compromise· between conflicting Senate and House bills. In the interests of accelerating the legislative process, however, usual procedures were not followed and no Conference Committee considered or reported on the bills. *See Zeller v. United States,* 467 F.Supp. 487, 498 (E.D.N.Y.1979).

that permit individuals to challenge the information contained in their records and to have amendments made if warranted. Again, access to the records is essential.

Moreover, sections 3(j) and 3(k), 5 U.S.C. §§ 552a(j) & (k), provide explicit exemptions from the access provisions of the Act.[4] If Congress had intended to shield from disclosure information in one person's record that pertains to another person, it could have and presumably would have added an exemption to sections 3(j) or 3(k).[5] We cannot agree with the IRS that section 3(b) creates such an exemption. As noted earlier, when properly construed, section 3(b) does not prohibit disclosure to a requesting individual of information contained in that individual's record.

The order of the district court granting defendant's motion for summary judgment is reversed and the cause is remanded to the district court for further proceedings consistent with this opinion.[6]

---

4. The exemptions listed in sections 3(j) and 3(k) permit federal agencies to promulgate rules authorizing the withholding of records that are (1) maintained by the Central Intelligence Agency; (2) compiled for certain law enforcement purposes; (3) maintained in connection with providing protective services to the President of the United States and others; (4) required by statute to be maintained and used solely as statistical records; (5) certain investigatory materials the disclosure of which *would reveal the identity of a confidential source*; (6) certain testing materials used to determine qualifications for appointment or promotion in the federal service the disclosure of which would compromise the fairness of the testing process; or (7) evaluation materials used to determine potential for promotion in the armed services, but only to the extent that disclosure would reveal the identity of a confidential source. *See* 5 U.S.C. §§ 552a(j) & (k). In addition, section 3(d)(5) exempts from disclosure "any information compiled in reasona-

ble anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5).

5. The district court did not address the question of whether the information withheld by the IRS is covered by one or more exemptions listed in section 3(j) and 3(k). We do not reach that issue in this appeal.

6. We note that the district court's memorandum accompanying its summary judgment order states that the court viewed the excised portions of Voelker's record *in camera*. This material was never included in the record of this case, however. Although we requested and obtained copies of the documents from counsel for the IRS on appeal, we remind the district court and counsel that in the future all documents upon which the trial court relies, including materials viewed *in camera*, must be made part of the record available to this Court on appeal.